# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**AUNDRA MILLER,**                                                 **PLAINTIFF,**

**v.**                                                                    **CIVIL ACTION NO. 2:04CV238-P-A**

**LOWE'S HOME CENTERS, INC., ET AL.,**                                 **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court upon Defendants' Motion for Summary Judgment [56]. Upon due consideration of the motion and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND[1]

One of Lowe's Home Centers, Inc.'s stores in Memphis, Tennessee hired Aundra Miller, a black male, in March 2001. Lowe's promoted him to Delivery Manager in September 2001. After having worked as the Delivery Manager for approximately two years, Miller transferred to the Southaven store. Miller worked at the Southaven store from June 2003 until November 5, 2003.

Lisa Coleman, the Store Manager, found several lapses in Miller's performance as a supervisor between Miller's arrival in June 2003 and August 2003. She issued him a written disciplinary notice after an in-person interview on August 15, 2003. These lapses included: (1) delivery tickets had not been signed off by a manager and had been left loaded overnight; (2) overdue tickets in the "due file" – dated invoices for merchandise that has not yet been delivered; and (3) incomplete paperwork. Coleman advised Miller of her expectations of him as the Delivery Manager.

---

[1] The facts are drawn heavily from the defendants' brief in support of its motion for summary judgment, often *verbatim*. Drawing them from the plaintiff's brief is problematic since the narrative facts set forth in Miller's response are either vague or nonexistent. In any event, the facts presented here are undisputed.

Afterwards, Miller walked off the job without informing Coleman. That same day, Miller called District Manager Layne Mills who suggested that Miller apologize to Coleman for leaving the store. Miller did so and Coleman told him to return to work. Upon returning to work, Coleman told Miller that Outside Lawn and Garden Manager Scott Little would be assigned to assist and advise him in the Delivery Department. Because walking off the job constitutes insubordination, a "Class A" violation of Lowe's Performance Management Policy, Miller could have been fired for his actions. Instead, Coleman issued Miller a final written notice.

On September 18, 2003, Zone Manager William Sloan (white) approached Miller about his absence the previous day. Miller had left early to attend physical therapy and did not return to the store. According to Miller, Sloan did not believe that he had been to physical therapy and called him a liar in a "loud and rude" manner. Miller avers that he had informed other managers of his absence but neglected to tell Sloan. Miller contacted Lowe's AlertLine on that same day regarding the incident because he felt Sloan's reaction was improper. A week or so later, Miller informed Store Manager Coleman about his confrontation with Sloan. According to Miller, Coleman said she would set up a meeting between Miller and Sloan but did not do so.

On October 15, 2003, Coleman and the Administrative Manager Tommy Miller, met with Miller to discuss problems they found in the Delivery Department. Coleman spoke with Miller about editing his own schedule without approval, incomplete safety truck logs, disorganization in the routing of trucks, and untimely completion of general daily functions. During this meeting, Coleman supplied Miller with materials regarding the Delivery Manager position and its functions, related policies and procedures, and rules pertaining to the fleet management programs. Miller indicated to Coleman that he understood the expectations. Coleman told Miller that she would follow up on his

progress in the coming weeks and that Tommy Miller would review Miller's weekly job responsibility standards for completion.

About two weeks later, on October 27, 2003, Miller allowed Delivery Driver Tony Ester to deliver items purchased by Ester for his uncle using Ester's employee discount. Miller admits that he knew that said actions violated Lowe's policies. In his deposition, Miller states: "I knew it was an improper purchase. He should have never made the delivery, but I – he was the only one there to deliver on that day." Miller Dep. 78. Nevertheless, Miller signed off on the delivery and never mentioned the violation to Store Manager Coleman.

On November 4, 2003, District Operations Training Manager Heather Davis conducted a random audit of the Delivery Department. The audit revealed numerous issues: (1) an overabundance of incomplete paperwork including incomplete delivery logs, daily inspection forms, and vehicle and merchandise logs; (2) vehicle service problems such as overdue maintenance and improper documentation; (3) the department lacked equipment utilization reports, a vehicle communication sign out log, and merchandise pick-up forms; and (4) employee's schedules had been changed without being noted on the store's master schedule and without the associate's or manager's initials. Miller had previously received verbal and written discipline regarding the same or similar violations.

On November 5, 2003, Store Manager Coleman terminated Miller for poor job performance. His termination notice detailed two problems: (1) Miller knowingly allowed Delivery Driver Ester to deliver items purchased by Ester for his uncle using Ester's employee discount; and (2) various Delivery Department violations that had been identified by District Operations Training Manager Davis during a random audit on November 4, 2003. Under Lowe's policies, either problem was a

sufficient basis to terminate Miller.

On August 30, 2004 Aundra Miller filed his *pro se* suit against Lowe's Home Centers, Inc., Lowe's of Mississippi, Inc., and Lowe's of Hernando, Inc. alleging unlawful employment discrimination based on race (black) pursuant to Title VII.[2]

Miller, acting *pro se*, alleges that he was subjected to racial harassment by his supervisors and that he was terminated from his job as the Delivery Manager because of his race – all in violation of Title VII of the Civil Rights Act of 1964.

On July 14, 2005, the defendants filed their motion for summary judgment. In their motion and in their reply brief, the defendants argue that Miller has produced no evidence that his experience with one of his managers, William Sloan (white), or his termination had anything to do with race.

On August 31, 2005, over a month after the deadline, Miller filed his *pro se* response to the motion for summary judgment. In this response, Miller states that he was terminated because of his race and without legitimate business reason and that he was harassed by management without providing any evidence tending to show either. Miller made no attempts to respond to the defendants' legal arguments – in fact, no reference to applicable law was made.

## II. DISCUSSION

**A. Summary Judgment**

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

---

[2] Clifton Goodloe filed suit along with Aundra Miller. On September 14, 2005, the court entered an order dismissing with prejudice all of Goodloe's claims for failure to file a response to the defendants' motion for summary judgment.

4

party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5 Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5 Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5 Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a

motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*., at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*., at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928,

939 (WD Tex. 1982).

**B. Title VII Race Discrimination**

Title VII prohibits discrimination based on race. 42 U.S.C. § 2000e-2(a). "Title VII discrimination can be established through either direct or circumstantial evidence" and when a case is based on circumstantial evidence, the court should look to the *McDonnell Douglas* test. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

"Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Laxton*, 333 F.3d at 578. (internal citations omitted). A prima facie case of race discrimination requires proof from the plaintiff that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse

6

employment action because of his race; and (4) he was replaced by someone outside the protected group. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). It is undisputed that Miller belongs to a protected class. However, it is disputed that Miller was qualified for his position as a Delivery Manager at Lowe's, that he was terminated because of his race, and that he was replaced by someone other than a black person.

The defendants argue that Miller was not qualified for his position, evidenced by his many aforementioned lapses in his duties as a manager. Miller has not disputed or otherwise addressed these lapses. The only evidence Miller provides that he was terminated based on his race involves his confrontation with one of his managers, William Sloan. That is, Miller suggests that because on September 18, 2003 Sloan called him a liar and was "loud and rude" to him because Sloan did not believe that Miller had missed work the previous day to perform physical therapy, he was terminated some two months later by another manager because of his race. However, Miller provides no evidence that race was ever a factor or was ever mentioned or intimated by Sloan or anyone else. Indeed, the events leading to Miller's termination occurred well after September 18, 2003. In any event, Miller has shown no connection between the Sloan confrontation and Miller's termination by the Coleman the store manager. Even if it were true that a similarly situated white person were treated differently regarding physical therapy, as Miller alleges without elaboration, Miller has still shown no connection between the event and Miller's termination some two months later after having been cited for several managerial inadequacies by various other members of management. Likewise, Miller has provided no evidence that he was replaced by other than a black person.

The court concludes that, even after viewing the facts in a light most favorable to him, Miller cannot demonstrate a *prima facie* case of race discrimination. Therefore his claims must fail.

Even if it were determined that Miller could demonstrate a prima facie case of race discrimination, the defendant has met its burden in the second stage of the *McDonnell Douglas* test because it has proffered legitimate, nondiscriminatory reasons for his termination:(1) Miller knowingly allowed Delivery Driver Ester to deliver items purchased by Ester for his uncle using Ester's employee discount; and (2) various Delivery Department violations that had been identified by District Operations Training Manager Davis during a random audit on November 4, 2003. Miller has not disputed the legitimacy of either of theses reasons. Since the employer has met its burden in producing a legitimate, nondiscriminatory reason for the adverse employment action, the presumption of discrimination dissipates. *Laxton*, 333 F.3d at 578.

The third stage of the *McDonnell Douglas* test requires that "[t]he plaintiff ... bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." *Laxton*, 333 F.3d at 578. (internal citations omitted). The court in *Laxton* instructs:

> To carry this burden, the plaintiff must produce **substantial evidence** indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation...." ... The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred. A decision as to whether judgment as a matter of law

8

> is appropriate ultimately turns on " 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.' "

*Laxton*, 333 F.3d at 578-579. (internal citations omitted) (emphasis added).

Miller has not carried his burden; he has produced insufficient evidence, much less substantial evidence, to prove by a preponderance of the evidence (that is, that it is more likely than not) that his employer discriminated against him because of his race. Therefore, even if Miller could establish a *prima facie* case of race discrimination, which cannot, he cannot meet his ultimate burden in proving that the reason he was terminated due to his race because he has given the court insufficient evidence to prove it.

Miller has also failed to create a genuine issue of material fact regarding his claim of hostile work environment race discrimination in relation to the confrontation with Sloan. According to Miller, Sloan called Miller a liar and was "loud and rude" to him because Sloan did not believe Miller's reasons for having missed work the previous day. For such behavior "to affect a 'term, condition, or privilege of employment' it must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Celestine v. Petroleos De Venezuela S.A.*, 266 F.3d 343, 353 (5th Cir. 2001). The plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). Furthermore, "[f]or a comment in the workplace to provide sufficient evidence for discrimination, it must be '(1) related [to the protected class of persons of which plaintiff is a member]; (2) proximate in time to the termination; (3) made

9

by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Trotter v. BPB America, Inc.*, 106 Fed.Appx. 272, 275 (5th Cir. 2004) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)).

Miller has provided no evidence that Sloan's comments were related to race. Nor was the confrontation proximate in time to the termination, nor was the confrontation related to the employment decision at issue since Miller was terminated for poor performance as a manger.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendants' Motion for Summary Judgment [56] should be granted and Aundra Miller's claims should be dismissed with prejudice. Accordingly, an Order shall issue forthwith,

**THIS DAY** of September 15, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE